## Staunton.

PERKINS FOR, &c. v. SEIGFRIED'S ADM'R.

SEPTEMBER 21, 1899.

1. WILLS—*Acknowledgment of Debt—Churches—Legacy—Statute of Limitations—Unincorporated Associations—Chancery Jurisdiction.*—A testator by a codicil to his will declares " I herein mention a debt of $600 I owe the Presbyterian church of Charlottesville, Va., and I wish it duly paid, without interest, out of my estate, to that church after my sister's death." The codicil is dated November 7, 1884. The sister died in 1896, and a suit was brought by one member of the church suing on behalf of himself and four hundred other members in 1898. There was no proof of the existence of such a debt except the statement of the codicil, and no evidence was offered against it.

*Held:*

    1. Though a church cannot take as legatee under a will, this is not a legacy, but a debt, and the codicil alone is sufficient proof of its existence.

    2. The right of action did not accrue till the death of the sister, and hence is not barred by the statute of limitations.

    3. Though churches have no corporate·existence in this State, they are recognized as legal organizations capable of holding property, and may sue to recover what they may lawfully hold.

    4. The suit was properly brought in equity by one member of the congregation suing on behalf of himself and the other members.

Appeal from a decree of the Circuit Court of Albemarle county, pronounced December 20, 1898, in the chancery suit of *Seigfried* v. *Purvis,* wherein appellant filed a petition, to which the appellee was the defendant.

*Reversed.*

The opinion states the case.

*George Perkins,* for the appellant.

*D. Harmon,* for the appellee.

HARRISON, J., delivered the opinion of the court.

In 1885 Frederika A. Seigfried, an unmarried woman, died, having theretofore made her last will and testament, which bears date October 1, 1880. The provisions of this will have no bearing upon the questions presented, and therefore need not be here set out. A codicil to said will dated the 7th of November, 1884, which is the basis of this proceeding, contains these words: " I herein mention a debt of $600 I owe the Presbyterian church of Charlottesville, Va., and I wish it duly paid, without interest, out of my estate to that church after my sister, Mrs. M. H. Blankenburg's death, by Captain W. O. Fry, whom I have appointed to settle up my estate. The reason I did not mention this debt in my last will is because I hoped to pay it during my natural life; and, as I now feel doubtful of this ability, I write this instrument in consequence." The remainder of the codicil is not material to the present inquiry. The will and codicil were duly admitted to record in October, 1885. It seems that the executor in the will either never qualified as such, or resigned the trust, as J. W. Seigfried appears in the record as administrator, d. b. n. c. t. a. of F. A. Seigfried, deceased.

Mrs. M. H. Blankenburg, the sister of the testatrix named in the codicil, died in the year 1896.

The administrator of S. A. Seigfried filed a bill in 1888, in the Circuit Court of Albemarle county, for the settlement of her estate, and in 1898 the appellant filed a petition in said suit on behalf of himself and the other members of the Presbyterian church of Charlottesville, who were too numerous to sue at law, alleging that the debt of $600 which S. A. Seigfried had stated

in the codicil to her will she owed the church, had not been paid, and asking that the same be paid to him for said church.

To this petition J. W. Seigfried, administrator, filed an answer containing these averments: " There is not and never has been any such debt against said estate. The law does not permit a church to make a contract of this sort, and in fact no such contract was ever made." Then follows a plea of the statute of limitations, and a denial of capacity on the part of the church, under the law, to take the money as a legacy. Upon the hearing, a decree was entered dismissing appellant's petition, and it is from that decree that this appeal is prosecuted.

It being the settled law of this State that a church cannot take as a legatee under a will, it becomes necessary to determine at the outset the nature of the testamentary disposition of the $600 made by the testatrix in favor of this church. By counsel for appellant, it is contended that it is a direction to pay a debt, while counsel for appellee argues that, although the testatrix employs the word " debt," the provision really and substantially directs the payment of a legacy, and that therefore the church has no capacity under the law to take the money.

As the record contains absolutely nothing except the codicil itself to show the purpose of this testamentary disposition in favor of the church, we must look to its words alone in deciding the question. It will be observed that the language of the codicil is " a debt," " I owe," " I wish it duly paid without interest." Such phrases as the foregoing were certainly used by the testatrix much out of their ordinary acceptation, if she had a legacy to the Presbyterian church of Charlottesville in her mind when she chose them as the expression of her intention. A legacy involves the idea of gratuity, donation, and such terms as are here found are ill-fitted to convey that idea.

It is urged on behalf of the appellee that in using the phrase " a debt " the testatrix had reference to the moral obligation she felt rested upon her by reason of the spiritual benefits she

had derived from the church.  We cannot concur in this inter-
pretation, inasmuch as the general sense of indebtedness spoken
of by counsel would hardly assume such definite monetary pro-
portions in the mind of the testatrix, or be considered by her
as being liquidated upon the payment of $600, or any other
fixed sum.  Moreover, the idea of interest is, we think we may
safely say, never associated with such obligations by those who
feel themselves under them.  Nor are we able to conclude from
the circumstance that the beneficiary is a church, instead of an
individual, or non-religious organization, that this was not a
debt in the ordinary and legal sense of the term; for while
churches are chiefly concerned with the promotion of the
spiritual welfare of mankind, yet, like secular organizations,
money and other forms of property are necessary to their main-
tenance.  Numerous expenses are necessarily incurred by
churches, and it is a matter of common knowledge that very
frequently members of the congregation of a church subscribe
in advance the sums which they respectively propose to con-
tribute, and that it is upon the faith of such subscriptions that
the church incurs liability.  Were it necessary, therefore, to
enter the realm of speculation to find an explanation for the
use of the terms found in the will under consideration, it would
not be difficult of discovery, for it can be reasonably conjectured
that the intention of the testatrix was to provide for the dis-
charge of some such obligation to this church as we have
indicated.

But in our view of the case, it is wholly unnecessary to seek
any such explanation, inasmuch as the language of the codicil
imports a distinct acknowledgment of an indebtedness to the
church, and that is all that the law requires to make it enforce-
able.  There is no more force in the contention that the church
in this case should show in what way the testatrix became in-
debted to it, than there would be in the contention that the
holder of a promissory note must show the consideration lying

behind his evidence of indebtedness as a condition precedent to enforcing its payment.  We hold, therefore, that the language of the codicil is the acknowledgment of the existence of the debt of $600 owing at that time by the testatrix to the Presbyterian church of Charlottesville, Va., which debt she, by that instrument, directed her executor to pay after the death of testatrix's sister, Mrs. Blankenburg.

The next point to be determined is whether or not this debt is barred by the statute of limitations.  Here again the codicil alone furnishes any guide, it constituting the sole evidence of the debt.  It is contended that, inasmuch as the estate of decedent consisted alone of personal property, the direction to the executor to pay this debt did not suspend the operation of the statute. Conceding that a direction by a testator that a debt shall be paid out of his personal estate, or charging his personal estate with the payment of a debt, does not operate to prevent such debt from being barred by the statute, the important question in this, as in all cases where the statute of limitations is pleaded, is, when did the cause of action accrue?  It is clear that the debt in this case existed as far back as the 1st of October, 1880— the date of the will.  Referring, however, to the sole memorandum of the debt under consideration which is furnished us, viz: the codicil, we read these words: " I wish it duly paid, without interest, out of my estate, to that church, after my sister, Mrs. M. H. Blankenburg's death."  If the words of the codicil are sufficient to legally establish the debt, as we have held that they are, then it necessarily follows that like significance must be accorded the language just quoted, which declares when the debt shall be paid.  In our view, therefore, the debt of $600 became due to the church upon the death of Mrs. Blankenburg, which occurred in the year 1896, at which time the cause of action arose.  This proceeding having been instituted in 1898, within the statutory period, the debt is not barred.

The next question to be considered relates to the power of a

church to sue at all, and if it can, to the legality of the particular form of proceeding which has been adopted in this case for the purpose of obtaining the money sought to be recovered.

A church has, and under the law as it now is, can have, no corporate existence in this State. Churches, however, are clearly recognized by the law of Virginia as being legal organizations, capable of holding property, and there would seem to be no sound reason for excluding them from any right touching any property which they are permitted by law to acquire or hold that is enjoyed by individuals or associations of a different character with reference to their property. It would be an anomaly, indeed, to declare that a church can hold property, and yet deny it the right to sue to redress any wrong or damage that it might suffer by reason of an illegal infringement of its rights in that property. Such a position would amount to a negation of the proposition that a church can even hold property, for if it can be taken from it, or destroyed, and no action lie for the damage sustained, then its property rights are a mere mockery and pretence.

A debt is as much the property of the creditor as the house in which he lives, assuming that he is the owner of his home. His right to sue the wrongdoer for an injury done the latter is no clearer than is his right to enforce payment of the former. So having held that the $600 in question is a debt due the Presbyterian church of Charlottesville from the estate of F. A. Seigfried, deceased, we conclude that it can sue to collect it.

This brings us to the second part of the question, viz: How shall the church sue? Aid in answering this question is afforded by the decision of this court in the case of *Coffman* v. *Sangston,* 21 Gratt. 263. In that case a society called the Baltimore Agricultural Aid Society was organized for the purpose of furnishing seed, farming implements, &c., to the farmers of the Southern States. The funds of the society were raised by voluntary subscriptions, and it was never incorporated. One of the agents of the society, whose duty it was to collect certain notes

given by purchasers of implements, &c., failed to turn over to the secretary of the society certain sums which he had so collected. Thereupon the secretary and eight other members of the society brought suit in chancery against the agent for an accounting, and for the purpose of recovering what he had failed to turn over; and it was alleged that the members of the society, numbering from four to five hundred, were too numerous to sue in their own names. It was held that the suit could be maintained in the form in which it had been brought. *Berkshire* v. *Evans*, 4 Leigh 223, is a further authority in support of the proposition that an unincorporated society may sue by its members to enforce its legal demands.

We approve the principle announced by the Supreme Court of Pennsylvania in the case of *Phipps* v. *Jones*, reported in 59 Am. Dec. 708, where it was said: "There ought to be no doubt about the right of unincorporated religious societies to sue on a contract made with them in their associate capacity, and for the legitimate purposes of their association, even though there be no persons named or described in the contract as trustees or committeemen on behalf of the society. Such associations have always, and especially since the act of 1731, been recognized as having an associate and *quasi* corporate existence in law, with power to hold land and build appropriate houses, and, of course, with power to acquire rights by contract, and to vindicate them. And, if the English common law forms are insufficient for such cases, we admit the infusion into our law of the plain equity that allows a committee of voluntary societies to sue and be sued as representatives of the whole. There is, therefore, no difficulty about sustaining this action if it has a contract to rest upon."

The appellant in his petition in the Circuit Court alleged that he was a member of the Presbyterian church of Charlottesville; that he sued on behalf of himself and the other four hundred members of that church who were too numerous to admit of their

Opinion.

all suing at law, and, as these allegations must be taken as true because not denied by the appellee, we regard the case at bar as coming within the doctrine of the cases just cited, and hold that this proceeding, in the form in which it was brought, was proper.

Nothing in this opinion is intended as a warrant for the conclusion that a testator can, under forms shown to have been resorted to for the purpose of evading the law, bestow upon a church property such as the law of this State forbids an organization of that kind to acquire by testamentary disposition. The sole evidence of the testatrix's intention in the case at bar is the codicil to her will, and, as the record does not disclose even so much as an effort on the part of the appellee to establish the fact that the design of the testatrix was to circumvent the law, our conclusions are as hereinbefore stated.

For these reasons the decree appealed from must be reversed, and the cause remanded for further proceedings to be had therein in accordance with the views expressed in this opinion.

KEITH, P., dissenting:

With great respect for the opinion of the court, I am constrained to dissent. That decision disclaims, it is true, any purpose to disturb the established policy of this State upon the questions involved, and yet I cannot resist the conviction that it points the way, and approves the mode, by which that policy may be wholly subverted.

*Reversed.*