# Richmond.

## JOHN H. BAKER v. D. L. EVERS, ET AL.

### November 15, 1923.

1. APPEAL AND ERROR—*Weight to be given Decision of Lower Court and County Authorities—Public Road Controversies.*—As the county road authorities and the local courts are in a better position than the Supreme Court of Appeals to understand and pass upon the merits of controversies in regard to the location of public roads and contracts in reference to right of ways for them, the Supreme Court of Appeals will proceed with great caution in overruling their action in such cases, especially where the rights of the parties are to be determined in large measure upon more or less conflicting testimony of witnesses who have testified in the presence of the trial judge.

2. STREETS AND HIGHWAYS—*Contracts in Regard to Right of Way—Case at Bar.*—Appellant's predecessors in title were joint owners of a tract of land and together with other landowners signed a petition for grading and macadamizing a certain road, by which they agreed to give free of cost to the county right of way for any changes of location and also subscribed towards the cost of the work. Appellant when he purchased the land from the joint owners was well informed as to the nature of this agreement of his grantors and undertook to pay their subscriptions.

   *Held:* That appellant was bound by his predecessors' contract with the county, although he acquired title before the actual establishment and location of the road.

3. JOINT TENANTS AND TENANTS IN COMMON—*Agency—One Joint Owner Acting for the Other.*—In the instant case a petition to a district road board for change of location of a road and a subscription paper were signed by the joint owners of a tract of land. The petitioners agreed to furnish necessary right of way free of cost to the county. The evidence clearly showed that in signing the papers one joint owner acted as the representative of himself and the other, and that the latter fully ratified his action. The appellant when he purchased the tract of land from the joint owners assumed the obligation on the part of both of his grantors to pay the subscription.

   *Held:* That the joint owner who signed the petition was the authorized agent of the other, and that he made a binding contract with the board which was recognized and assumed by the appellant.

4. STREETS AND HIGHWAYS—*Grant of Right of Way—Grant Binding on Grantor's Successors in Title—Case at Bar.*—In the instant case the joint owners of a tract of land with others petitioned a district road board to change the location of a county road and agreed to furnish free of cost to the county right of way for the changes. It appeared from the evidence that it was agreed that one member of the board was to finally fix the location of the road. There was a tentative survey by the other member of the board and some work was done upon this survey, but the tentative location was never formally adopted by the board of supervisors, or approved by the member of the board who was to select the location, and the location was finally changed by this member. Appellant purchased the land after the tentative survey and before the final location and claimed that the authorities had no right to change the location of the road after his purchase.

*Held:* That the board had the right to make the change complained of.

5. EASEMENTS—*Location of Easement—When Location Becomes Fixed—Case at Bar.*—Where the right to an easement is granted without giving definite location and description to it, the exercise of the easement in a particular course or manner, with the consent of both parties, renders it fixed and certain, and a grantee has no right afterwards to make changes affecting its location. But that principle does not apply in the instant case where the selection of the final location of a road depended upon the approval of a member of the district road board, and that approval had never been given until the road complained of was selected by him.

Appeal from a decree of the Circuit Court of Augusta county. Decree for defendants. Complainant appeals.

*Affirmed.*

The opinion states the case.

*Timberlake & Nelson* and *Curry & Curry,* for the appellant.

*Jos. A. Glasgow, H. H. Kerr* and *John R. Saunders, Attorney-General,* for the appellee.

KELLY, P., delivered the opinion of the court.

This is an appeal from a decree dissolving an injunction and dismissing the complainant's bill in a suit brought by John H. Baker against D. L. Evers and R. W. Moore, the latter two constituting the road board of North River district of Augusta county.

Some time in the year 1917 a movement was instituted by landowners on the route looking to the macadamizing of a road in North River district leading from Spring Hill bridge, by way of Roman post office, to the Middle River line, a distance of about six miles. D. L. Evers was a member of the board of supervisors from North River magisterial district, and R. W. Moore was superintendent of roads for Augusta county, and as such officials they constituted the district road board.

Parties interested in the project made inquiry of Evers to ascertain what could be done about it, and on or about September 1, 1917, a meeting was held at Roman to discuss the matter. At that meeting there were present the two members of the road board and a number of landowners concerned, including the appellant, John H. Baker. There is some uncertainty in the testimony as to just what was said by Evers at that meeting, but the clear weight of the evidence is to the effect that he stated repeatedly, and with emphasis, that if the road was built at all, it would have to be located according to his best judgment, and that rights of way must be secured accordingly, and in advance of the undertaking. Shortly thereafter, as the outcome of that meeting and with the clear understanding then reached that Evers was to be allowed a free hand in the selection of the location, a petition signed by a number of the landowners interested (but not including Baker) was addressed to the board of supervisors of Augusta county and delivered to the road board in the following form:

"We the undersigned citizens of Augusta county who

are petitioners and subscribers on the petition for the grading and macadamizing of the road leading from Spring Hill by Roman to the Middle River district line near Croushorn's.

"We agree and bind ourselves to give free of cost to the county, in addition to the money subscribed, any available stone and water for construction of said road, also to give free of cost to the county right of way for any changes of location and to waive all land and fence damage for all changes and widening of said road. Further to give free of cost to the county, camp sites for the men employed in construction of said road.

"Further, to pay one-half of the money subscribed when work is begun and the balance when said road is completed."

Accompanying this petition was a subscription list signed by sundry parties interested (but not including Baker) stating the amounts which they would respectively contribute to the building of the road.

A few days after the above mentioned petition and subscription were presented, R. W. Moore, road superintendent and member of the district road board, proceeded to make what he says was an "entirely preliminary" survey of the road. He was engaged in this work two days. Evers accompanied him on the first day but was not with him on the second day. The controversy in this case arises over a portion of the road which was surveyed by Moore on the second day and in the absence of Evers. At the time that survey was made the land traversed by the portion of the road involved in this suit was owned by S. H. and B. B. Hunter, and the land next to it on the east and through which the road also extended, known as the Baker home farm, was owned by the appellant, John H. Baker.

Some two weeks or more after the above mentioned survey was made, to-wit, on September 27, 1917, the appellant, who had declined to sign the petition aforesaid, signed and delivered to the board a paper in the following words: "I will give free right of way *as surveyed* for the road and change my fence at my expense and give other accommodations as I choose." (Italics added.)

On July 1, 1918, the appellant bought the Hunter farm, obtaining a deed therefor from S. H. and B. B. Hunter which concluded with this sentence: "It is further agreed that the said Baker shall pay the subscription of $170.00 made by the said Hunters to the macadamizing the road through the farm." Some time after this deed was made a considerable amount of work was done on a portion of the road through the Hunter farm as located by the preliminary survey made by Moore. The survey at this point followed substantially the old road through the place, and the work which was done on it consisted of some grading preparatory to macadamizing, and the moving of some of the fences and one or more telephone poles. It is not clear from the record whether the changes in the fence were made by the road force or by Baker; nor does the record show who moved the telephone pole or poles. It is clear, however, that such work as was done on the line as located by Moore was done under his direction and without any instructions from Evers. The work at that point was suspended later on, and when the road force was ready to resume the construction of the road through the Hunter farm in the fall of 1921, they undertook, pursuant to instructions from Evers, who in the meantime had decided to change the location, to place the road through the farm some distance south of the original location, and in such a way as to be very objectionable to the appellant. As to whether the proposed

change would in fact damage the appellant, the evidence is conflicting, but this is an immaterial question, since the case before us depends solely upon the right of the board to make the change.

Baker protested the proposed change of location and brought this suit to enjoin the board from making it. A preliminary injunction was awarded, but upon a final hearing this injunction was dissolved and the bill dismissed.

[1] If we can see that the decree complained of has violated the substantial rights of the appellant, then, of course, it is our duty to reverse it. It must be remembered, however, that county road authorities and the local courts are in much better position than we are to understand and pass upon the merits of cases like this, and we ought to proceed with great caution in overruling their action. This observation applies peculiarly to cases where the rights of the parties are to be determined in large measure upon more or less conflicting testimony of witnesses who have testified in the presence of the trial judge. In the instant case the judge of the Circuit Court of Augusta county was unable to sit, and by agreement with counsel on both sides the cause was heard by Hon. Richard S. Ker, judge of the corporation court of the city of Staunton, "upon the bill and answer and upon the evidence of witnesses examined in open court by consent of all parties."

We will now consider the several assignments of error.

[2, 3] 1. It is insisted, first, that the decree is erroneous "because the aforesaid paper, exhibit A (petition of landowners), by which S. H. Hunter, one of the petitioner's grantors, agreed 'to give free of cost to the county right of way or any change of location' cannot be construed as creating in favor of the road board any easement or servitude over said land which would run

with the same and bind it in the hands of a subsequent purchaser who acquired title before the actual establishment and location of the road."

We are unable to discover any merit in this assignment. The offer by the Hunters was a joint and mutual offer made by a number of landowners for a joint project and was accepted and acted upon by the road board. It is true B. B. Hunter did not sign the petition containing the offer, but the evidence clearly shows that in signing it S. H. Hunter acted as the representative of himself and his brother B. B. Hunter, and that the latter fully ratified such action on his part. The subscription paper accompanying the petition was signed in the name of both S. H. and B. B. Hunter, and bound them to pay the sum of $170.00 on account of the road. When the appellant purchased the Hunter farm he negotiated solely with S. H. Hunter, and in the deed, which was signed and acknowledged by both the Hunters, the appellant expressly assumed the obligation on the part of both his grantors to pay the subscription. There can be no doubt that S. H. Hunter was the duly authorized agent of B. B. Hunter, and that he made a binding contract with the board which was recognized and assumed by the appellant. The only question is, as we shall presently see, whether under that contract the county road authorities had the right to change the location from that which was indicated by Moore's original survey.

[4] 2. In the second place it is said that the decree is erroneous "because said paper, even if effective otherwise to confer upon the road board the right to locate at its pleasure a road through said lands in the hands of petitioner, a subsequent purchaser of the same, was not signed by B. B. Hunter, one of the grantors of petitioner, and is therefore not valid and complete."

This assignment is disposed of by what has been said above with respect to assignment No. 1.

3. The third and fourth assignments of error may be considered together. They complain of the decree for reasons stated as follows:

(a) "Because, even if said paper could be held to confer rights upon the road board which could be enforced against petitioner, a subsequent purchaser of the land, petitioner had the absolute right to assume (as he did) that the location which the road board had surveyed and staked off and reported to the board of supervisors of the county before petitioner bought the land was the location which would be followed, and the road board had no right, after petitioner had bought the land, to abandon this location and undertake to build a road upon an entirely different location.

(b) "Because, when the road board, after petitioner had acquired the land, entered upon the same and took possession of and began work upon the location which had been surveyed and staked off at the time petitioner bought the land, it thereby fully exhausted its rights, whatever they may have been, under the agreement, exhibit A which had been signed by S. H. Hunter, one of the petitioner's grantors; and the action of the road board in thus taking possession of and beginning the work of constructing the road, constituted a definite and formal acceptance on its part of that route and it had no right to afterwards abandon the same and undertake to adopt an entirely different route."

These two assignments raise the one important and debatable question in the case, and that is whether the original location of the road through the Hunter farm had been so definitely and finally fixed as to exhaust the rights of the road board in that respect. We think the court was justified in answering this question in the neg-

ative, and this is the end of the case. Baker knew all about the petition under which the road board was proceeding. It is very significant that he had refused to sign that petition as to his home farm because, as he admits in his testimony, he was unwilling to be bound by its broad terms, and objected to it particularly because of its provision for changes of location. When the somewhat vague and indefinite provisions of the petition are read in the light of the surrounding circumstances, and of the previous negotiations in which it was distinctly understood that the project would not be undertaken unless Evers was to have the right to make the final selection of what he considered the best route, it is perfectly clear that the Hunters and all other persons who signed that petition contracted to give the road board such a right of way through their respective premises as would be satisfactory to Evers. Baker had stepped into the shoes of the Hunters as to the Hunter land, and the only question the lower court had to decide, and the only one we need to review, is whether the board had the right to make the change complained of.

It is too clear to admit of debate that the board in the outset could have placed the road where they now propose to place it through the Hunter land; nor is there any room to question their right in the outset to have made as many temporary and tentative locations as they might have deemed best with a view to getting what Evers would regard the best ultimate location. We do not overlook the evidence as strenuously relied upon by the appellants to sustain their contention that the road had been finally and definitely located through the Hunter land before there was any attempt to shift it to the location now proposed. It is undoubtedly a fact that a good deal of work was done on the road as indicated by what Moore calls the preliminary survey, but

the weight of the evidence is to the effect that Evers did not direct or authorize this work.   It is also true that Moore made a formal report to the board of supervisors in such a form as indicated that he thought the survey as made by him, subject to certain minor changes, would be the final location of the road.   It does not appear, however, that this location was ever formally adopted by the board of supervisors, and it is reasonably clear from the evidence that Evers had at no time approved the preliminary survey through the Hunter land in such a way as to relinquish his right to change it if he thought another location would be better.

We have given our best consideration to the testimony as a whole, and have reached the conclusion that we ought not to interfere with the decision of the learned judge of the lower court.   The evidence as it appears to us in print satisfies us that he has made no mistake, and furthermore, as already indicated, we ought to attach especial weight to his conclusion in this case because the evidence is conflicting and the witnesses testified before him in person.

[5] It is, of course, well settled that where the right to an easement is granted without giving definite location and description to it, the exercise of the easement in a particular course or manner, with the consent of both parties, renders it fixed and certain, and a grantee has no right afterwards to make changes affecting its location.   But that principle does not apply to this case because the selection of the final location depended upon the approval of D. L. Evers, and that approval had never been given until the road now complained of was selected by him.

For the reasons indicated, the decree must be affirmed.

*Affirmed.*