# 𝕽𝖎𝖈𝖍𝖒𝖔𝖓𝖉.

## Marchant & Taylor v. Mathews Co., et als.

### September 25, 1924.

1. Appeal and Error—*Proceedings to Open a Highway—Parties—Case at Bar.*—In the instant case it was contended that appellants who obtained the writ of error to the Supreme Court of Appeals were not parties in the lower court to the proceedings to open a public road leading to a wharf owned by them. The name of one of appellants appeared in the original petition for the establishment of the road. The name of both appeared in the first order of the board of supervisors establishing the road, as parties, with others, filing the petition. The final order of the circuit court and every notice to take depositions showed that they were parties. One of the appellants owned a tract of land over which the proposed road was to go.

   *Held:* That they were parties, and necessary parties, and had not only the right to prosecute the case before the board and in the court below, but to apply for a writ of error and prosecute the appeal, and it made no difference whether other parties before the board or in the court below took any part in the application for the writ of error or not.

2. Appeal and Error—*Road Proceedings—Parties—Case at Bar.*—Persons who were the most active parties throughout the whole proceedings to open a highway, and the parties at whose cost the proceedings were dismissed in the circuit court, and at whose wharf the proposed road was to terminate, were such parties as had a sufficient interest to come within the meaning of the words "any person who thinks himself aggrieved by any judgment" in section 6336 of the Code of 1919, granting an appeal in road controversies, and it was not necessary that any other persons who were petitioners or parties otherwise should assist in the prosecution of the appeal. In such cases an appeal by one inures to the benefit of all.

3. Appeal and Error—*Final Order—Proceedings to Open Highway—Case at Bar.*—In the instant case it was contended that an order entered in a proceeding to open a highway, refusing to open the road to a proposed wharf "at this time," and permitting the owners of an old wharf to repair it and have it ready for use by the public within a certain time, was a final order from which it was too late to apply for a writ of error more than one year thereafter.

   *Held:* That there was no merit in this contention, as the language, "the court at *this time* doth refuse to open the road prayed for," on

its face, contemplates further and definite action at some future time on the whole question at issue in the case, to wit, the opening of the road.

4. APPEAL AND ERROR—*Final Order—Definition.*—A final order is one which disposes of the whole subject, gives all the relief contemplated, provides with reasonable completeness for giving effect to the sentence, and leaves nothing to be done in the cause save to superintend ministerially the execution of the order.

5. SERVICE OF PROCESS—*Power to Waive Notice.*—The power to accept service of notice is tantamount to power to waive notice.

6. SERVICE OF PROCESS—*Attorney and Client—Power to Accept Service—Power to Waive Service.*—In the absence of statute, a general retainer does not authorize an attorney to accept service of process by which the court acquires *jurisdiction* over the party. But when an attorney assumes to acknowledge service of summons, or to waive it, the court will *presume*, in the absence of proof to the contrary, that he has been specially authorized to do so. And after the court has acquired jurisdiction over the defendant's person, an attorney may accept service of all necessary and proper papers during the progress of the case.

7. COUNTIES—*Service of Process—Commonwealth's Attorney—Waiver by Commonwealth's Attorney—Section 2686 of the Code of 1919.*—Under section 2686 of the Code of 1919, providing that process instituting a suit against a county may be executed by being served on the Commonwealth's attorney of said county, the Commonwealth's attorney can waive process in any suit in which the county is defendant.

8. COUNTIES—*Board of Supervisors—Commonwealth's Attorney.*—From the provisions of sections 2710 and 2759 of the Code of 1919, it seems to follow that while the duty of the Commonwealth's attorney to the county is paramount, since he represents the county before the board of supervisors, and is required to resist the action of the board when in his opinion it is in conflict with the county's interest, yet he is the legal adviser of the board, and in case of suit against the board he would no doubt represent the board. So in case of an appeal from a decision of the board, he would, unless in compliance with his duty he had taken the appeal from the decision of the board in the interest of the county, represent the board upon the appeal.

9. COUNTIES—*Opening Public Road—Parties—Board of Supervisors.*—Section 1980 of the Code of 1919 requires, in case of an appeal from the board of supervisors upon their action in opening or refusing to open a public road, "the board of supervisors shall be summoned to appear at the hearing of the said appeal." In the instant case the board was not summoned. It was a necessary party, made so by the statute, and the circuit court had no jurisdiction to pro-

ceed with the trial of the case, until the board was duly summoned, or appeared without summons, and waived it, or by implication waived it by contesting the case on its merits, or its attorney appeared and assumed to waive service of notice, and the court presumed, in the absence of proof to the contrary, that the attorney was specially authorized to do so.

10. COUNTIES—*Opening Public Road—Parties—Board of Supervisors—Waiver of Service—Case at Bar—Quaere.*—In the instant case, an appeal from the board of supervisors to the circuit court in proceedings to open a road, the question arose as to whether the waiver of service of process on the board of supervisors made by the Commonwealth's attorney, who stated that he represented the county, made the board a party and so conferred jurisdiction upon the circuit court. It certainly would not but for the fact that the record shows that the waiver of service by the Commonwealth's attorney was undoubtedly intended on behalf of the board of supervisors, and not the county, as it followed immediately upon, and because of, a motion by counsel for plaintiffs in error to dismiss the appeal from the board to the circuit court, for the reason that the board of supervisors had not been summoned. This seems to have been the understanding of all parties, and the court, because the record discloses that the case was proceeded with without further protest.

11. HIGHWAYS—*Establishment—Necessity—Road Leading to Wharf.*—Whatever degree of necessity may be required by law as a prerequisite to the establishment of a public road, there could hardly be a greater necessity than that of several populous communities, contiguous to a navigable waterway, to have provided at public expense a public road to the only wharf within eight or ten miles except one on the opposite side of the water.

12. HIGHWAYS—*Necessity—Road Leading to Wharf—Moot Question—Case at Bar.*—In the instant case, a proceeding to open a highway to a new wharf, the lower court refused to open the road "at this time," but directed that the owners of an old wharf should repair it and have it ready for use in a certain time. The owners of the old wharf repaired it in accordance with the order. The owners of the old wharf moved to dismiss the writ of error obtained by the owners of the new wharf on the ground that the question as to the necessity of the road had become moot. It appeared from the evidence that steamboat service was not resumed at the old wharf and that on account of the inherent dangers of the location of that wharf such service would never be resumed.

*Held:* That there was no change in the necessity for the road, and the question was not moot.

13. HIGHWAYS—*Necessity—Road Leading to Wharf—Moot Question—Case at Bar.*—A case, a proceeding to establish a road to a wharf, has not

become moot when the final order of the lower court leaves the citizens of several populous communities without a public road to the only steamboat wharf sufficiently close to them to serve their needs, and at which steamboats land, and leaves them dependent upon a steamboat wharf at which no steamers now land or can be expected to land, because the landing there is dangerous to steamers, and which further leaves the owners of a new wharf, and the owners of the land upon which the new wharf is built, without a public road thereto.

14. Highways—*Road Controversies—Weight to be Attached to Decisions of County Road Authorities and Local Courts—Case at Bar.*—The county road authorities and the local courts, when in accord, are in much better position than the appellate court to understand and pass upon the merits of questions of fact in controversies concerning public roads. But in the instant case a large part of the material evidence was in the form of depositions, the board of supervisors and the report of the viewers was in favor of establishing the road, and the record was replete with evidence that the circuit court erred in not directing that the new road be opened as prayed for, therefore, the judgment of the lower court was reversed.

Error to a judgment of the Circuit Court of Mathews county, in a proceeding to establish a public road. To a judgment refusing to open the road, the petitioners assigned error.

*Reversed.*

The opinion states the case.

*Lewis & Sutton* and *W. M. Minter*, for the plaintiffs in error.

*Jos. E. Healey, J. Boyd Sears,* and *Frank Armistead,* for the defendants in error.

Chichester, J., delivered the opinion of the court.

W. M. Marchant and George A. Taylor owned and operated, as partners, a steam boat wharf at Crickett Hill, in Mathews county, located on the land of

W. M. Marchant, bordering on Milford Haven, a branch of the Piankitank river. At the time of the construction of this wharf, in the early part of 1920, there was no other wharf in operation anywhere in the vicinity for the accommodation of the citizens of this section of Mathews county. Prior to the erection of this wharf merchants and individuals living around Crickett Hill, Redart and Hudgins, which are thickly settled communities in Mathews county, had to ferry their products across Milford Haven or dray them to wharves eight or ten miles distant.

A contract was made between Marchant and Taylor with the Baltimore, Chesapeake and Atlantic Railway Company, before the erection of their wharf, under the terms of which the wharf was made a regular calling point for steamers of this company, and steamers have made regular landings there since May, 1920. For many years prior to 1918 there had been a wharf, known as "Old Crickett Wharf," owned by Mrs. W. N. Trader, W. N. Trader, Jr., and Peachy Trader, two thirds, and one third by L. M. Travers (the three former being appellees here, and the latter being one of the petitioners for the opening of the public road which is the subject of controversy in this case), located on Milford Haven some 500 yards west of the present site of the Marchant and Taylor wharf, and at the terminus of the main road leading to Crickett Hill.

There was no public road leading to the new Marchant and Taylor wharf, and on the 30th day of April, 1920, W. M. Marchant and George A. Taylor and others filed their petition containing the names of over sixty citizens of Mathews county praying "that a public road be opened leading from the main county road near Crickett Hill to a point on Milford Haven, on the lands of W. M. Marchant, upon which a public wharf is

now being erected, as a landing for the B. C. & A. steamers." In response to this petition the board of supervisors appointed viewers to go upon the land proposed to be taken and make their report to them according to law. The viewers so appointed made their report to the board of supervisors as follows:

"We, the undersigned, viewers appointed by your honorable board to view the road leading from the main county road to Crickett Hill to the new wharf erected on the land of W. M. Marchant, beg leave to report that we believe the road should be established as a public road, that the same will be of great public convenience to the public as well as to individuals.

"No yard, garden, orchard, nor any part thereof, will have to be taken.

"We believe the road is of such public convenience that the same should be opened and kept in repair by the public.

"The names of the landowners along the route are as follows: Wm. N. Trader's estate and L. M. Travers, and Wm. M. Marchant.

"Wm. M. Marchant claims no land damage. We believe that $50.00 is a fair compensation to be paid to Wm. N. Trader's heirs and to L. M. Travers.

"We believe the road should be opened twenty-two (22) feet in width.

"We believe the road can be built for $100.00; there will be no ditches required on the road.

"We viewed the above road after being duly sworn for the purpose."

(Signed.)

For clearness, a copy of the map of the proposed road returned by the viewers is attached hereto.

Upon the coming in of this report the board of supervisors entered a "show cause" order which was duly executed upon the owners of the land to be taken

for the proposed road (Mrs. W. N. Trader, W. N. Trader, Jr., and Peachey Trader and L. M. Travers), the heirs at law of Wm. N. Trader, owners of Crickett Hill, and W. M. Marchant, the latter claiming no

damages; and upon a hearing, a final order was entered by the board declaring that the proposed road was one of such public convenience that it should be opened at public expense, directing that the road be established, and awarding damages of $50.00 to the owners of the Crickett Hill property. The last paragraph of this order is as follows: "The attorney for Mrs. Trader hereby gives notice of his intention to appeal this matter to the Circuit Court of Mathews county."

Without any further proceedings the clerk placed the case on docket of the circuit court of Mathews county and it appeared there at the September term, 1920, under the style of *W. M. Marchant and George A. Taylor* v. *Mathews County*. The case was partially heard by the circuit court in September, 1920, and continued, in order that the despositions of Turnbull Murdock, vice-president of the Baltimore, Chesapeake and Atlantic Railway Company, and others might be taken in Baltimore.

The contest at this point seems to have resolved itself into one between rival wharf owners, and the real issue before the court, the question of the expediency of establishing the proposed new road, was lost sight of. The depositions of the president of the B. C. & A. Co. and of four steamboat captains of the company who were familiar with Milford Haven, the old Crickett Hill wharf and the new Marchant and Taylor wharf, testified in substance that their boats had never made a landing at the old wharf since 1918; that it had fallen into disrepair; that, at best, it was a dangerous landing, owing to the narrowness of the stream at that point; that the company had made a contract with Marchant and Taylor under which their boats made regular landings at their wharf; that the new wharf was better located and afforded a safe landing for their vessels; and

that they would not return to the old wharf under any conditions.

A number of local witnesses were examined who testified as to the public service the new wharf was affording the community and the necessity for a public road over which to reach it. There were some who testified that if the old Crickett Hill wharf was repaired it could supply the needs of the community. But there was no evidence that even tended to rebut the testimony of the several officials of the B. C. & A. Ry. Co. that the old wharf was a dangerous landing place for vessels of the type operated by that company, and there was no assurance that there would ever again be any service from the old Crickett Hill wharf by this or any other steamboat company. However, the court, after hearing the evidence, on May 19, 1921, entered an order in which it declared: "The court * * doth at this time refuse to open the road as prayed for by petitioners, but doth permit the defendants to repair the wharf * * * at Crickett Hill * * * the same to be built and ready for use by the public twelve months from January 7, 1921," etc. On November 24, 1921, Mrs. W. N. Trader and others reported that the old wharf had been repaired. At the May term of court, 1922, without further inquiry, or the taking of any further evidence to ascertain whether the steamboat company would make landings at the wharf since its repair, or whether there was any other service from that point, whether, in short, the necessity for the opening of the public road from the old Crickett Hill road to the Marchant and Taylor wharf which the viewers, appointed by the board of supervisors, thought existed, still existed, entered a final order in which it refused to open the road prayed for by the petitioners and dismissed the petition at their costs. From this order the petitioners asked for and were granted a writ of error.

There are a number of errors assigned as grounds for reversal of the judgment of the lower court, but in our view of the case it is only necessary to the decision of the case to consider the second, which will be referred to later and which goes to the merits of the case. Before discussing this, however, it is deemed proper to dispose of several technical questions raised in the trial court and argued here.

[1, 2] It is contended that W. M. Marchant and George A. Taylor, who applied for and obtained a writ of error to the Supreme Court of Appeals, were not parties to the proceedings in the lower court. There is no merit in this contention. The name of George A. Taylor appears in the original petition for the establishment of the road. The names of W. M. Marchant and George A. Taylor appear in the first order of the board of supervisors as parties, with others, filing the petition. The final order of the circuit court and every notice given to take depositions shows that they were parties. The statute provides that "whenever the board of supervisors shall be of the opinion that it is necessary to establish _____a road, or where the county superintendent of roads, *or any other person*, applies to the board, thereupon it may appoint five viewers," etc. There is no necessity for a petition, and as above set out when the first order of the board of supervisors recited that W. M. Marchant, George A. Taylor and others came before the board and filed their petition for a new road, they then and there brought themselves within the description of the statute "any other person applies to the board." Besides W. M. Marchant owned a tract of land over which the proposed road was to go, and he and George A. Taylor owned the wharf which was to be one terminus of the road. They were parties,

and necessary parties, and they not only had the right to prosecute the case before the board and in the court below, but to apply for a writ of error and prosecute the appeal in this court. It makes no difference whether other parties before the board or in the court below took any part in the application for the writ of error or not, or joined in prosecuting the appeal. Section 6336 of the Code provides that "*any person* who thinks himself aggrieved by any judgment, etc., in a controversy concerning a roadway, may present a petition for a writ of error or supersedeas to the judgment or order." Certainly W. M. Marchant and George A. Taylor, the most active parties in this controversy throughout the whole proceedings, and the parties at whose cost the proceedings were dismissed in the circuit court, who felt aggrieved, were such parties as had a sufficient interest to come within the meaning of the statute "any person who thinks himself aggrieved by any judgment," and it was not necessary that any other persons who were petitioners or parties otherwise should assist in the prosecution of the appeal. In such cases an appeal by one party inures to the benefit of all. *Coffman* v. *Sangston*, 21 Gratt. (62 Va.) 263; *Lynchburg Ry. Co.* v. *Dameron*, 95 Va. 545, 28 S. E. 951; *Johnson* v. *Black*, 103 Va. 477, 49 S. E. 633, 68 L. R. A. 264, 106 Am. St. Rep. 890; *Perkins* v. *Seigfried*, 97 Va. 444, 34 S. E. 64; 3 Corpus Juris, 1007.

[3] It is also contended that the order entered on May 12, 1921, referred to above, was a final order; that more than one year elapsed before a petition for a writ of error was applied for, and that it was too late to apply for a writ of error when application was made therefor. It is only necessary to say that the order by its very terms is not final. The language "the court *at this time* doth refuse to open the road prayed for," on its

face, contemplates further and definite action at some future time on the whole question at issue in this case, to-wit, the opening of the road. What follows confirms this already inevitable conclusion. The court, in effect, postpones the opening of the road for eight months in order to give the owners of the old Crickett Hill wharf an opportunity to repair it.

The court impliedly said to these owners, "if you repair your wharf I will not open the road, but if you do not, I will." There was nothing final or conclusive in this order. But the trial court sets any contention as to the finality of the order of May 12, 1921, at rest, where, at page 40 of the printed record, in amplifying the proceedings in a general order, it is entered of record "at the May term of the court, 1921, the order was entered which is shown by the record in this case, refusing to open the road prayed for by petitioners, which order was not a final order and was stated by the court not to be a final order and so understood by all parties in interest."

[4] "A final order is one which disposes of the whole subject, gives all the relief contemplated, provides with reasonable completeness for giving effect to the sentence, and leaves nothing to be done in the cause save to superintend ministerially the execution of the order." 4 Minor's Institutes, 860. The order of May 12, 1921, in no way measured up to these requirements.

It is not necessary to pass upon the question raised in the court below by appellants as to the lack of jurisdiction of the circuit court because of the failure to serve process upon the board of supervisors when the appeal was taken, as required by section 1980 of the Code, and whether this could be cured by verbal waiver of notice by the attorney for the Commonwealth, who

stated that he represented the county, but the question raised is one of considerable interest.

[5, 6] The power to accept service of notice is tantamount to power to waive notice. In 6 Corpus Juris, section 148, it is said (quoting from the text): "In the absence of statute, a general retainer does not authorize an attorney to accept service of process by which the court acquires *jurisdiction* over the party. But when an attorney assumes to acknowledge service of summons, or to waive it, the court will *presume,* in the absence of proof to the contrary, that he has been specially authorized to do so. And after the court has acquired jurisdiction over the defendant person, an attorney may accept service of all necessary and proper papers during the progress of the case." Section 2686 of the Virginia Code, 1919, provides that "counties may sue in *their own names,*" etc. * * * "May be sued in their own names * * * and the process instituting such suit may be executed by being served on the Commonwealth's attorney of said county."

[7] It follows, therefore, without the aid of the general rule, in Virginia, by statute, the Commonwealth's attorney can waive process in any suit in which the county is defendant. This was what the Commonwealth's attorney of Mathews county did. His statement was, according to the record, that "he appeared for the county of Mathews and that he waived any notice that was required by statute." But is representation of the county representation of the board of supervisors in this case? Section 2759 of the Code 1919, says: "The attorney for the Commonwealth shall represent the *county before* said board, and it shall be his duty to resist the allowance of any claim which is unjust," etc. The same section requires him to appeal from the decision of the board to the circuit court

when any claim allowed by the board in his opinion is improper or unjust. And by the same section he is required to be present at each and every meeting of the board, and give his legal opinion when required by the board on all questions arising before said board.

[8] Section 2710 provides that the board of supervisors may sue and be sued by the name of the board of supervisors of ............................................. county, in all matters connected with their duties, etc. It seems to follow that while the duty of the Commonwealth's attorney to the county is paramount, since he represents the county before the board and is required to resist the action of the board when in his opinion it is in conflict with the county's interest, yet he is the legal adviser of the board and in case of suit against the board he would no doubt represent the board. So in case of an appeal from a decision of the board, he would, unless in compliance with his duty he had taken the appeal from a decision of the board in the interest of the county, represent the board upon the appeal.

[9] Section 1980 of the Code requires, in case of an appeal from the board of supervisors upon their action in opening or refusing to open a public road, "the board of supervisors shall be summoned to appear at the hearing of the said appeal." In the instant case the board was not summoned. It was a necessary party, made so by the statute, and the circuit court had no jurisdiction to proceed with the trial of the case until the board was duly summoned, or appeared without summons, and waived it, or by implication waived it by contesting the case on its merits (as was done in *Board of Supervisors of Louisa County* v. *Proffit, et als.*, 129 Va. 9, 105 S. E. 666); or its attorney appeared and assumed to waive service of notice and the court presumed, in the absence of proof to the contrary, that the attorney

was specially authorized to do so. No waiver by other parties to the suit or other parties in interest or their attorneys could give the court jurisdiction to proceed with the trial of the case unless and until it had acquired jurisdiction over the board of supervisors.

[10] Did the waiver of service of process by the Commonwealth's attorney, who states that he represented the county, make the board a party? It certainly would not but for the fact that the record shows that the waiver of service by the Commonwealth's attorney was undoubtedly intended on behalf of the board of supervisors, and not the county, as it followed immediately upon, and because of, a motion by counsel for plaintiffs in error to dismiss the appeal from the board to the circuit court, for the reason that the board of supervisors had not been summoned. This seems to have been the understanding of all parties, and the court, because the record discloses that the case was proceeded with without further protest.

[11] Coming now to the second assignment of error, which is as follows: "The record shows that the public road established by the board of supervisors to the wharf of appellants was suitably convenient and a matter of public necessity; that the wharf to which this public road extends is the only wharf at which steamers are willing to stop; the only wharf at which steamers have been stopping up to the time of the order appealed from," etc., and considering with it the motion of appellees to dismiss the writ of error and supersedeas, "because the question as to the necessity for a public road has become moot," let us discuss these questions in the light of the facts above set out. The facts show certainly that at the time the case was heard by the circuit court on the 19th day of May, 1921, and the order was entered giving the owners of Crickett Hill

wharf time to repair it, there existed a necessity to establish the public road petitioned for. Whatever degree of necessity may be required by the law, there could hardly be a greater necessity than that of several populous communities, contiguous to a navigable waterway, to have provided at public expense a public road to the only wharf within eight or ten miles, except one on the opposite side of Milford Haven. As was said by the court in *Lewis* v. *Washington*, 5 Gratt. (46 Va.), at page 270:

"It was proper for the court to consider the necessities of the applicant or applicants in regard to such an accommodation, the extent to which it may be productive of convenience or inconvenience to other individuals, the direct or indirect advantages that may ensue to the public at large," etc.

The learned judge of the circuit court was undoubtedly impressed by the necessity as it then existed, because the order which he entered on the 19th of May, 1921, can bear no other construction than that, if the appellees here did not repair their wharf so as to afford shipping facilities for the petitioners at the old Crickett Hill wharf, and thus do away with the then existing necessity for a public road to the new wharf, the court would grant the prayer of the petitioners and open the new road. Furthermore, it is recited in the court's order, "the court * * being of the opinion that if that wharf was repaired there would be no public necessity for establishing a public road to the wharf owned by Marchant and Taylor," etc., the necessary inference from this is, that there was then an existing necessity for the road. The court, while sensible of the necessity of the petitioners and the public generally, was evidently giving full weight to the apparent inconveniences of the complaining owners of Crickett Hill, the land, in

part, through which it was proposed to open the road, and the owners of the old wharf.

[12-14] The old Crickett Hill wharf was repaired, but, leaving aside the question as to whether the court should have decided the issue upon the then existing conditions, was the necessity for the proposed road eliminated after the old wharf was repaired? This brings us to the point as to whether the question of the necessity has become moot. If it has, the record does not disclose it. The old Crickett Hill wharf was repaired, but no service thereto was resumed by the steamboat company, and according to the testimony of the president of the B. C. & A. Ry. Company none ever will be afforded there again because of inherent dangers of the location. From the record, as it appears here, therefore, there has been no change in the necessity for the road. The old Crickett Hill wharf might just as well have remained out of repair. A case has not become moot when the final order of the lower court leaves the citizens of several populous communities without a public road to the only steamboat wharf sufficiently close to them to serve their needs and at which steamboats land, and leave them dependent upon a steamboat wharf at which no steamers now land or can be expected to land, because the landing there is dangerous to steamers, and which further leaves the owners of the wharf, and the owner of the land upon which the new wharf is built, without a public road thereto.

We are not unmindful of the weight that should attach to the decision of the learned judge who heard the case in the court below.

In *Baker* v. *Evers*, 137 Va. page 492, 120 S. E. 278, the court said:

"It must be remembered, however, that county road authorities and the local courts are in a much better

position than we are to understand and pass upon the merits of cases like this, and we ought to proceed with great caution in overruling their action."

In that case, however, the board of supervisors, all the local authorities and the court were in accord, and the evidence was heard *ore tenus* before the judge, and was conflicting. In the instant case a large part of the most material evidence was taken in Baltimore in the form of depositions, and upon the most material questions involved there is no conflict. It showed, together with all the other evidence in the case, conclusively that the Marchant and Taylor wharf was then the only calling point for merchant steamers for a large community; that there was no public road to this wharf; that there was a necessity for such a public road, or at least that it would be a great public convenience; and that no service would ever be expected at the old wharf even if it was in good repair, because it was a dangerous landing for merchant vessels. In addition, in the instant case, the board of supervisors, after hearing evidence and after considering the report of the viewers recommending the establishment of the road, ordered the road established at public expense. This report of viewers was, and is, entitled to great weight. *Wygal* v. *Wilder and others*, 117 Va. page 896, 86 S. E. 97. So that the local road authorities and the lower court were not in accord as to the propriety of establishing the road. And so, while it is true, as said in *Neale* v. *Farinholt*, 79 Va. page 59: "Where a judgment and action of the court below is definitely and intelligently presented in the record and does not appear from the record to be wrong it is presumed to be right." "But, on the other hand, if the action of the court appears to be wrong, then it should be reversed." *Baker* v. *Evers*, 137 Va. 492, 120 S. E. at page 286. And the record

here is replete with evidence that the circuit court erred in not directing that the new road be opened as prayed for. In *Giesy* v. *Cincinnati, W. & Z. R. Co.*, 4 Ohio St. 308, the court held:

An obligation rests upon the State to provide for the construction of public highways for the comfort, convenience, and prosperity of the people, in the fulfillment of which the power of eminent domain is justifiably exercised, whatever the character of the way or mode of travel upon it.

And in *Sherman* v. *Buick*, 32 Cal. 241, 91 Am. Dec. 577, it was held:

"Whenever the necessities or the convenience of the public, which includes everybody, requires a road for the purposes of trade or travel, it is the duty of the government to provide one and, if necessary, to take private property for that purpose, upon making just compensation."

Having taken this view upon the merits of the case, we are of opinion that the judgment of the circuit court should be reversed, and this court will enter such order as, in its opinion, the said court should have entered upon the hearing.

*Reversed.*