# Richmond

## Elvin David Daniels v. Truck & Equipment Corporation, Et Al.

November 30, 1964.

Record No. 5803.

Present, Eggleston, C. J., and Spratley, Buchanan, Snead, I'Anson and Carrico, JJ.

*W. G. Burnette* (*J. Benson Hoge*, on brief), for the plaintiff in error.

*James A. Harper, Jr.* (*Richard H. Barrick; Hunton, Williams, Gay, Powell & Gibson; Wingfield & Barrick*, on brief), for the defendants in error.

SNEAD, J., delivered the opinion of the court.

On October 13, 1961, Elvin David Daniels, plaintiff, instituted an action at law against Truck & Equipment Corporation and Mack Trucks, Inc., defendants. Daniels sought to recover damages in the sum of $100,000, which he claimed resulted from the purchase of a Mack tractor. The jury returned a verdict for $299.19 in his favor against both defendants. Upon motion of defendants, the trial court set aside the verdict as being contrary to the law and the evidence and entered summary judgment for defendants. We granted plaintiff a writ of error.

A number of pleadings were filed and hearings had before the trial of the case actually began. Besides the original motion for judgment, there were four amended motions filed by leave of court. The original motion alleged that defendants had breached an express war-

ranty they had given on the tractor and had also wrongfully repossessed the vehicle. The defendants demurred to it on the grounds that there was a misjoinder of causes of action and the demurrer was sustained for that reason. The demurrer to the first amended motion was sustained because a cause of action had not been stated. Likewise, defendants' demurrer to the second amended motion was sustained on account of failure to state a cause of action. The occurrences relating to the entry of the order sustaining the demurrer to the second motion will be discussed in detail *infra*.

Thereafter, a third amended motion was filed. It was demurred to on the grounds, among other things, that there was a misjoinder of causes of action. The record does not show whether or not the court ruled on this demurrer. However, subsequently a fourth amended motion was filed, to which defendants also demurred on similar grounds stated above. The court overruled this demurrer and directed that defendants file their responsive pleadings, which they did within the time specified by the court. A trial was had on April 17, 1963.

The trial was limited to the issue of breach of express warranty and damages resulting therefrom. A tort action for the alleged unlawful repossession of the tractor is pending in the Circuit Court of Albemarle County. It was agreed by the litigants to forego trial of that issue until the present case was decided.

On September 30, 1959, plaintiff purchased from defendant Truck & Equipment Corporation (sometimes hereinafter referred to as the company) a new Mack diesel tractor under terms and conditions of a written conditional sales agreement. On the same day the contract was assigned to defendant Mack Trucks, Inc. and plaintiff executed a receipt of notice of the assignment and agreed to make all payments provided for therein to the assignee.

The contract provided, among other things, that plaintiff would make the specified monthly payments; that time was of the essence; that if plaintiff failed to pay any installments when due "the full amount of the Time Balance remaining unpaid shall become immediately due and payable", and that upon default the vendor could take immediate possession of the tractor "without notice or demand." It further provided that the vendor made no warranties as to the tractor, express or implied, except the manufacturer's standard vehicle warranty, incorporated by reference; that the contract embodied the entire agreement between the parties; that no amendment

should be binding on the vendor unless in writing and signed by its authorized representative, and that any provision of the agreement prohibited by law would be ineffective but would not invalidate the remaining provisions.

Under the express warranty referred to above, Truck & Equipment Corporation warranted the tractor sold to plaintiff to be free from defects in material and workmanship, under normal use and service. The obligation under this warranty was limited as follows: (1) All defective parts returned to vendor within 90 days after date of delivery and not in excess of 4,000 miles of operation would be replaced without cost to plaintiff. (2) All parts of the diesel engine found defective and returned to vendor within 90 days after date of delivery and not in excess of 25,000 miles of operation would be replaced or repaired with no cost to plaintiff. (3) All diesel engine parts found to be defective and returned to vendor within one year after date of delivery and not in excess of 100,000 miles of operation should be replaced or repaired at a prorated cost to plaintiff which "(1) the actual mileage of the vehicle bears to 100,000 miles or (2) the number of months since date of delivery to the original purchaser bears to one year—whichever charge shall be greater."

At the time the tractor was first delivered to plaintiff it did not meet the specifications in that it had a single reduction rear end instead of a dual reduction rear end. The change was made and plaintiff accepted the vehicle. On October 3, 1959, plaintiff began "hauling and pulling freight" with the tractor for a concern. He operated out of Hagerstown, Maryland and traveled long distances, averaging about 3,000 miles per week.

On October 14, eleven days after he started using the tractor, the clutch pedal broke off in Lewisburg, West Virginia. Plaintiff had it welded there and that night at Stephens City, Virginia, the engine "started to roaring" and the drive shaft of the tractor broke and fell onto the highway. The next morning plaintiff took the drive shaft to the shop of defendant Truck & Equipment Corporation in Harrisonburg, Virginia, where it was repaired at no cost to plaintiff. According to Eugene Kauffman, service manager, a new clutch pedal was ordered at no cost to plaintiff, but when it arrived plaintiff did not want it installed as the welded pedal was "doing all right."

Daniels testified that he continued to have trouble with the vehicle and complained to the company. Defendant Truck & Equipment

Corporation repaired the injectors after the tractor had been operated about 21,000 miles, replaced the air compressor at 29,342 miles, and replaced the exhaust valve at approximately 36,000 miles. These repairs were made at no cost to plaintiff.

On December 3, plaintiff brought the tractor to the company's shop. He complained of "smoking and loss of power" and he stated that the engine was in a "tight bind". He testified that he asked the mechanic "to pull the head and the pan off to see what was causing the bind and the tightness of that engine", but this was not done. Kauffman, the service manager, admitted that he complained about "not having enough power" and smoking but said that was a common complaint about diesel engines. "You hear that from ninety-nine out of a hundred on that." Plaintiff's exhibit No. 1 (repair order) shows that work was done on the engine at that time pursuant to a complaint of excessive smoking and loss of power.

On February 27, 1960, about five months after the date of delivery, plaintiff's relief operator was driving the tractor along the highway near Harrisonburg, Virginia, when suddenly "it sounded like the transmission was coughing" and the vehicle was pulled to the side of the highway and brought to a stop. The engine was badly damaged. There was a hole in the side of the block and in the bottom of the oil pan.

Kauffman, who investigated the cause of the damage, had this to say: "The connecting rod had broke or either the bolt had broke, letting the rod come loose, or the rod itself had broke. It was so mangled up it was hard to tell which had broken first. But anyway, it was related right with the connecting rod itself." No complaint had ever been made to defendants concerning the connecting rod.

As a result of the damage the company installed a new diesel engine at a cost of $2,546.31. Since the old engine had been operated 51,372 miles and approximately 5 months the company, relying upon the terms of the express warranty, fixed plaintiff's share of the replacement cost at approximately $1,200. Subsequently, a "policy adjustment" was voluntarily made by defendants, and plaintiff's share of the cost was reduced to $649.31. According to Robert Plecker, manager of Truck & Equipment Corporation, plaintiff did not complain about this bill and later the unpaid balance of $382.83 on his open account was "marked off" the books as a bad debt.

After the new engine was installed, plaintiff operated the tractor and generally complained that the engine acted "the same as the first."

He testified that the new engine was "tight and wouldn't turn loose", "it binded" and "didn't pull right." Plaintiff became in arrears in payment of his monthly installments, and in a letter dated October 19, 1960, he promised to make a payment "on my truck next week". He also requested that his payments be reduced to $250 a month. No mention was made in the letter of any claim for damages on breach of warranty or on any other ground. Subsequently, the tractor was repossessed because monthly payments were past due. Approximately a year later plaintiff instituted this action.

Plaintiff has made nine assignments of error. In his first assignment he says that the court erred in sustaining defendants' demurrer to his original motion for judgment, which alleged breach of warranty and also wrongful repossession of the tractor. He argues that there was no misjoinder of causes of action, because both causes grew out of the same conditional sales agreement.

In support of his position, plaintiff cites *duPont Co.* v. *Universal Moulded Prod.*, 191 Va. 525, 62 S. E. 2d 233. In that case we did permit the plaintiff to join counts of warranty and tort in the same motion for judgment. We held that the plaintiff's demands were of the same nature and closely related. "Each arose out of the same general cause of action, in a continuous course of dealing with reference to one subject [right], and one judgment may be given." See also *Swift and Company* v. *Wells*, 201 Va. 213, 219, 110 S. E. 2d 203.

In the *duPont* case, the causes of action were closely related and involved one right. The misjoinder was one of form and not of substance. In the case at bar, however, plaintiff sought to join two unrelated causes of action which involved more than one right and different kinds of proof, likely to result in confusion in the trial. His suit for wrongful possession is still pending and may be more fairly tried if not mixed with this action for breach of contract. The general rule, which prohibits the joining of causes of action in tort and contract in the same motion for judgment is enunciated in *Kavanaugh* v. *Donovan*, 186 Va. 85, 93, 41 S. E. 2d 489, and applies here. See also Burks *Pleading and Practice*, 4th ed., § 98, p. 206; 1 M. J., Actions, § 19, p. 110.

We hold that the trial court did not err in sustaining the demurrer to the original motion for judgment on the ground of misjoinder of causes of action.

In his second assignment, plaintiff claims that the court erred in

sustaining defendants' demurrer to his first amended motion for judgment. This assignment merits no discussion. Suffice it to say that the motion did not state a cause of action, and the trial court's ruling was entirely proper.

Plaintiff places emphasis on his third, fourth and fifth assignments of error. They will be considered together. Essentially, he contends that the court erred: in entering the order dated July 24, 1962, extending the time within which defendants could plead to his second amended motion for judgment; in overruling his motion to vacate the order extending the time; in refusing to enter for him a judgment by default, and in sustaining defendants' demurrer to the second amended motion.

On June 18, 1962, defendants were ordered to file within 15 days "such pleas, motions and grounds of defense" to the second amended motion as they might deem appropriate. On July 24, upon motion of defendants the court extended the time for filing defensive pleadings until July 12 and ordered defendants' demurrer, which was lodged with the clerk on July 11, filed. On July 16, plaintiff filed a motion for the entry of judgment by default, and on July 24, he filed a motion to vacate the order which extended the time for defendants to plead. By orders dated August 2, both of these motions were overruled, and the demurrer was sustained for failure to state a cause of action.

Plaintiff takes the position that the order of June 18 was a "final judgment", and that under Rule 3:21, Rules of Court, the trial court lost jurisdiction to modify it after July 9, *i.e.*, 21 days from the date of its entry. Thus, he says that the court did not have jurisdiction to allow defendants to file their demurrer on July 11. With this contention we do not agree. The order of June 18 was not a final judgment within the meaning of Rule 3:21. It did not dispose of the action or dismiss the case. It merely ordered defendants to file their pleadings within 15 days.

" 'A final order is one which disposes of the whole subject, gives all the relief contemplated, provides with reasonable completeness for giving effect to the sentence, and leaves nothing to be done in the cause save to superintend ministerially the execution of the order.' 4 Minor's Institutes, 860". *March't & Taylor v. Mathews Co.*, 139 Va. 723, 734, 124 S. E. 420; 21A M. J., Words and Phrases, p. 319; see also Ballentine's Law Dictionary, p. 504.

Plaintiff also points out that when defendants prepared the

order of June 18, which sustained their demurrer to the first amended motion with leave to plaintiff to file an amended motion within 10 days, they failed to insert therein a time for filing their responsive pleadings. Thus, he contends that defendants made an election under Rule 3:7, Rules of Court, not to file any additional pleadings and were barred from pleading to the second amended motion.

Rule 3:7 reads in part: "An order requiring or permitting the plaintiff to file a bill of particulars or amended motion for judgment shall fix the time within which it may be filed, and shall also fix the time within which the defendant shall file his pleadings, unless he relies on the pleadings already filed."

Plaintiff was not prejudiced by defendants' failure to insert in the order the time for filing their pleadings. The record shows that plaintiff prepared and presented to the court a separate order also entered on June 18, which allowed defendants 15 days within which to plead to the second amended motion. Clearly, plaintiff's actions indicated that he did not believe that defendants had elected not to file additional pleadings.

Moreover, plaintiff fails to give consideration to Rule 3:13. It provides in part: "The time allowed for filing pleadings may be extended by the court in its discretion, and such extension may be granted though the time fixed has already expired; provided, however, that the time fixed by Rule 3:6 for filing pleas in abatement shall in no case be extended." The court had authority, under this rule, to extend the time for defendants to file their pleadings. *Turner* v. *Buick Corporation*, 201 Va. 693, 695, 112 S. E. 2d 911. The order recited that the extension was granted "upon good cause therefor shown," and on the record before us we cannot say that the trial court abused its discretion by so acting.

The demurrer to the second amended motion was properly sustained as it failed to state a cause of action. We find that the trial court did not err as contended by plaintiff in his third, fourth and fifth assignments of error.

Plaintiff, in his sixth assignment, complains of the court's action in restricting the amount of recovery and the issues to the terms of the express warranty. He argues that as a result of the breach of warranty he suffered damages in excess of the cost of repairs, such as loss of business and the tractor itself. On the other hand, defendants say that the action was brought for breach of the express warranty; that the warranty specified the remedy for de-

ficiencies; and that the court properly restricted recovery to the terms of the warranty. We agree with defendants' position and find this assignment of error to be without merit.

In his seventh assignment, plaintiff says that the court erred in refusing certain of his instructions. But the record shows that no exceptions were taken to the court's actions with regard to instructions. The court asked counsel: "Do you Gentlemen wish to note any exceptions with respect to the instructions?" They replied: "No, sir." That being the case we need not consider objections made in this court for the first time. Rule 1:8, Rules of Court, and cases there cited.

The eighth assignment charges that the court erred in setting aside the verdict. The court stated when it ruled: "I am of the opinion that there isn't any evidence in this case to sustain the verdict, and the motion [to strike] should have been sustained to begin with."

Defendants made every repair to the tractor provided for in the warranty in accordance with its terms. In fact, defendants voluntarily made a policy adjustment, not provided for in the warranty, and reduced plaintiff's share of the cost for replacing the engine from about $1,200 to $649.31. There was no showing with reasonable certainty that any of the defects which existed within the 90 day period from date of delivery caused the severe damage to the engine on February 27. Plaintiff was not satisfied with the performance of either the old or the new engine, yet he operated each of them approximately 50,000 miles. The tractor, after installation of the new engine, had been driven over 200,000 miles and was still in operation at the time of trial. Upon a consideration of the entire record, we find that the evidence was not sufficient to support a recovery for breach of warranty and that the court properly set aside the verdict.

Finally, plaintiff contends that he should be granted a new trial on the grounds of after discovered evidence. He states that after trial counsel for defendants served upon his counsel a "counterclaim" dated April 16, 1963, which was not filed, containing allegations that were in direct conflict with the testimony given at the trial by one of defendants' witnesses. The record does not show that this question was ever raised in the court below, and under familiar principles the assignment of error will not be considered here.

For the reasons stated, the judgment appealed from is

*Affirmed.*