# CIRCUIT COURT OF THE CITY OF RICHMOND

Barbara Leahy

v.

American Medical Response,
a wholly owned subsidiary of
Laidlaw, Inc.,
and Matthew Burton

July 16, 1999

BY JUDGE MELVIN R. HUGHES, JR.

This case is before the court on Defendant Mercy Ambulance's Special Plea of Sovereign Immunity and Defendant Matthew Burton's Plea of Sovereign Immunity and Motion for Summary Judgment. The case arises out of a March 1, 1996, accident in the City of Richmond involving a Forest View Volunteer Rescue Squad (Forest View) ambulance driven by defendant, Matthew Burton, and a Norfolk Southern train. The plaintiff was a volunteer with the rescue squad and was riding in the back seat of the ambulance as the third member of the crew on an emergency call.

A review of the relationship of the entities involved in providing the City with ambulance services in Richmond is important in deciding the issues raised by the Plea and motion. The facts and circumstances are before the court through discovery, depositions, and pleadings. These are taken as true for the purpose of deciding the Plea.

In 1990, the City of Richmond formed Richmond Ambulance Services, Inc., (ASI), to hold an interim emergency medical services franchise for ambulance services in the City. After public bidding, ASI contracted with

Mercy[1] for the provision of ambulance services within the City of Richmond. Subsequently, the Richmond City Council formed the Richmond Ambulance Authority (RAA), which replaced Richmond ASI, to create a unified emergency medical services system. The contract with Mercy was subsequently transferred to the RAA.

In addition to the ambulance services provided by Mercy, there were also four volunteer rescue squads within the City. The City then passed an ordinance requiring that there be an advanced life support (ALS) provider on every ambulance that responds to any call in the City. As a result, two volunteer squads stopped providing services in Richmond. For the two that remained, RAA provided advanced life support personnel from Mercy to the volunteer squads on a temporary basis. When RAA stopped providing the personnel, Forest View decided to pay for an advanced life support provider itself.

Using Mercy as a "resource pool" Forest View through Mercy made an announcement for interviews of potential advance life support applicants with an eye to employing such persons. Burton was selected by Forest View from the Mercy applicant pool to serve as an ALS provider on Forest View's squad three shifts a week. Forest View then paid RAA a set amount per hour for the time that Burton worked at Forest View. RAA would then pay Mercy, who would issue Burton's pay check for both the three shifts that he worked at Forest View and for the one shift a week that he worked for Mercy.

During Burton's three shifts per week at Forest View, Burton wore a Forest View uniform, was required to assist in keeping the rescue squad station clean, and made sure that the Forest View equipment was in operating order. Burton was required to respond with his Forest View unit when the unit was dispatched and was under the supervision and at the direction of the Lieutenant in charge for the particular shift he was working.

By virtue of Va. Code § 27-23.6:

A. Any county, city or town may contract with or provide for any volunteer fire-fighting or rescue companies or associations in the county, city or town for the fighting of fire or provision of rescue services in any county, city or town. If such provisions are made by the county, city or town, the fire-fighting or rescue company shall be

---

[1] The court is aware of the fact that Mercy Ambulance of Richmond no longer exists, it having been merged into Tidewater Ambulance Service, Inc., as of January 1, 1998. Its current corporate name is American Medical Response. For the purposes of this letter however, the defendant will be referred to as Mercy.

deemed to be an instrumentality of the county, city or town and as such exempt from suit for damages done incident to fighting fires or providing rescue services therein. The county, city or town may elect to provide for the matters authorized in §§ 27-4 and 27-39.

B. Any county, city or town may provide fire-fighting and rescue services to its citizens by using both government-employed and volunteer company or association firefighters and rescuers. If such a system is utilized, the volunteer fire-fighting and rescue companies and association shall be deemed an instrumentality of the county, city or town, and as such exempt from suit for damages done incident to providing fire-fighting and rescue services to the county, city or town. The county, city or town may also elect to provide for matters authorized in §§ 27-4 and 27-39. (1970, c. 187; 1982, c. 239; 1991, c. 54.)

Thus, the issues to be decided are whether Burton was under the control of and was working for Forest View at the time of the accident and does he have immunity under § 27-23.6. There is also the question of whether Mercy, as Burton's employer, is immune.

The court decides that Burton has immunity under § 27-23.6 for ordinary negligence but fact questions remain as to whether his actions constitute gross negligence, in which case no immunity attaches. The court decides that it is not necessary to reach the issue of Mercy's claimed immunity at this time because Burton was not its employee at the time of the accident.

[T]he proposition is supported by many decisions, and probably disputed by none, that a servant in the general service of one master may be transferred, under contract or otherwise, to the service of another, so as to become for the time the latter's servant, with all the legal consequences of that relationship.

*Coker v. Gunter*, 191 Va. 747, 752 (1951) (citations omitted). "Under the borrowed servant doctrine, a worker, although directly employed by one entity, may be transferred to the service of another so that he becomes the employee of the second entity ... ." *Metro Machine Corp. v. Mizenko*, 244 Va. 78, 82 (1992). "It sometimes becomes necessary to inquire who was the master at the very time of the negligent act or omission and we must inquire whose is the work being performed — a question which is usually answered by ascertaining who has the power to control and direct the servants in the performance of their work." *Coker*, 191 Va. at 753-54.

[W]hile selection of the servant, payment of his wages and power of dismissal are elements to be considered on the question of master and servant, they are not essential to that relationship; but the power of control is the most significant element bearing on that question. That principle has been often repeated and consistently adhered to.

*Coker*, 191 Va. at 753.

There is no dispute that Burton was an employee of Mercy. Mercy trained him in Advanced Life Support, issued his paycheck, provided health insurance, disability insurance, workers' compensation coverage and unemployment benefits. The issue however, is whether at the time of the accident, he had become and was acting as a servant of Forest View.

Forest View selected Burton for the position based on his credentials and his interview. Forest View could not terminate his employment with Mercy, but it had the power to terminate his relationship with Forest View. It paid his salary for the time that he spent at Forest View. During his three shifts at Forest View, Burton wore a Forest View uniform and was required to assist in keeping the station clean and checking equipment. He was required to respond when his unit was dispatched even if the ambulance was dispatched to Chesterfield County. He drove an ambulance that belonged to Forest View and used their equipment while on the job. At the time of the accident, Burton was driving a Forest View ambulance and responding to a call under the direction and order of the Forest View Rescue Squad.

As stated by the Supreme Court, an important factor in an analysis of sovereign immunity is control. While Burton was at Forest View, he did not receive orders from Mercy; Mercy did not tell him where to go or what to do. While he was at Forest View, Burton worked under the supervision and at the direction of the Lieutenant in charge for the particular shift he was working. Forest View was the one who supervised Burton and had control over his actions while he was working his three shifts at Forest View. The court finds, therefore, that Burton was a loaned employee acting under the direction and control of Forest View at the time of the accident.

Plaintiff points to the fact that Burton still worked for Mercy one shift a week and that Mercy provided the training for Burton, as factors which indicate that he was not under the control of Forest View at the time of the accident. The court finds that these factors are not inconsistent with the court's finding that Burton was an employee of Forest View. In *Ideal Steam Laundry v. Williams*, 153 Va. 176 (1929), a servant in the general employ of a laundry was injured while working at Malone's home. The court held that the servant was required to work one day a week at the home of Malone, was under the

control of Malone and his wife while in their home, both as to the work performed and as to the method of accomplishing it and, thus, was at that time the servant of Malone and not the laundry. Therefore, the fact that Burton was employed by Mercy does not change the fact that he was an employee of Forest View at the time of the accident. Furthermore, as to the training, the usual practice concerning loaned servants is that an employer "borrows" an employee who has the essential skills and training that the employer's regular employees do not have. The fact that the general employer was the one who provided the training, does not prevent the employee from falling under the "borrowed servant" doctrine.

As stated previously, when an employee is transferred to the service of another entity so that he becomes the employee of the second entity, he acquires "all the legal consequences of that relation." *Metro Machine*, 244 Va. at 82. Therefore, if Forest View is entitled to sovereign immunity, which it clearly is by § 27-23.6(A), then Burton as its employee at the time also enjoys immunity.

Virginia Code § 27-23.6(A) specifically provides that volunteer fire fighting and rescue companies are entitled to sovereign immunity. In *National Railroad Passenger Corp. v. Catlett Volunteer Fire Co.*, 241 Va. 402 (1991), the Supreme Court ruled that this immunity extended to the individual members of the squads when they were acting on behalf of the immune entity. Whether Burton is entitled to sovereign immunity in this instance, then, is determined by whether this act falls under the protection of the doctrine.

"The question of whether a particular act is entitled to the protection of sovereign immunity depends upon whether the act under consideration is classified as discretionary or ministerial in nature." *Colby v. Boyden*, 241 Va. 125, 128-29 (1991). In *Catlett*, the court found that the act of crossing a railroad track without stopping in order to extinguish a fire was an exercise of judgment and discretion. 241 Va. at 413-14. This court sees no distinction between the acts of that fireman and the acts of Burton in this case. Burton is therefore entitled to invoke the defense of sovereign immunity and is liable only for gross negligence, if proven.

For these reasons, Burton's Plea of sovereign immunity is granted; Burton's motion for summary judgment is overruled. The court will defer ruling on Mercy's Plea of Sovereign Immunity since its position no longer appears relevant to the case at bar.